IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAULA S. CANTLEBERRY,           )
                                )
          Plaintiff,            )
                                )
v.                              )    Case No. 07 C 5695
                                )
PHYSICIAN CARE, LTD. and        )    Magistrate Judge Keys
ALEXANDER NICHOLS,              )
                                )
          Defendants.           )

**MEMORANDUM OPINION AND ORDER**

On September 17, 2008, a jury returned a verdict in favor of Paula Cantleberry and against her former employer on her sexual harassment and retaliation claims. The jury awarded Ms. Cantleberry $43,750 in compensatory damages and $41,875 in punitive damages; the jury also determined that Ms. Cantleberry was entitled to backpay, though the parties had stipulated prior to trial that the Court would set the actual amount of that award. Ms. Cantleberry has now moved for an award of backpay, plus prejudgment interest; she has also filed a petition for attorneys' fees and costs.

Backpay & Prejudgment Interest

In her first motion, Ms. Cantleberry seeks $59,067 in backpay, plus interest on that award in the amount of $8,891.55. The defendants do not challenge Ms. Cantleberry's right to backpay; nor do they challenge her backpay calculation. The

defendants do, however, challenge Ms. Cantleberry's right to prejudgment interest; they argue that such an award, on top of the jury's punitive damages award, amounts to an improper double recovery. Alternatively, the defendants argue that, if the Court decides that prejudgment interest is appropriate, it should not award the full amount plaintiff requests. The Court disagrees on both counts.

First, punitive damages and prejudgment interest serve distinct purposes: the former is designed to punish or deter conduct, and the latter is simply designed to make the aggrieved party whole, to account for the time value of money. The defendants' argument about double recovery might hold water if Ms. Cantleberry were attempting to obtain prejudgment interest on her punitive damages award, see *Fine v. Ryan International Airlines*, 305 F.3d 746, 757 (7th Cir. 2002); *Fortino v. Quasar Co.*, 950 F.2d 389, 397-98 (7th Cir. 1991). But she is not. She is seeking interest on the backpay award only, and the Court sees no reason to deny that request. The Court awards Ms. Cantleberry backpay in the amount established at trial and agreed to by the defendants: $59,067.00. The Court also agrees that interest on the award should be compounded, and so awards prejudgment interest on backpay in the amount of $8,891.55.

Attorneys' Fees & Costs

In her next motion, Ms. Cantleberry seeks an award of attorneys' fees and costs. In her initial petition, she sought $59,899.00 in fees, plus $3,410.38 in costs; she added another $4,500 in fees in her reply brief, bringing the total requested award to $67,809.38. The defendants do not dispute Ms. Cantleberry's right to receive an award of fees; but, in their view, she is entitled to significantly less than she claims.

A party who prevails on her sexual harassment suit is entitled to a reasonable award of attorneys' fees. See 42 U.S.C. § 2000e-5(k). The starting point for determining what is "reasonable" is the "lodestar" amount – the calculation of the number of hours reasonably expended on the case, multiplied by the appropriate hourly rate for the various attorneys who performed that work. E.g., Flaherty v. Marchand, 284 F.Supp. 2d 1056, 1062 (N.D. Ill. 2003)(citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). Once the lodestar is established, the Court must then exclude any hours not "reasonably expended" on the litigation; the Court may then further reduce the award based upon a variety of factors, the most important of which is probably the degree of success obtained. E.g., Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 550 (7th Cir. 1999)(citing Hensley, 461 U.S. at 434-36; Bankston v. State of

*Illinois*, 60 F.3d 1249, 1255-56 (7th Cir. 1995)). The party seeking the fee award bears the burden of proving that the claims fees were reasonable. *Spegon*, 175 F.3d at 550 (citing *Hensley*, 461 U.S. at 433).

To support her petition for $67,809.38 in fees and costs, Ms. Cantleberry submitted invoices with descriptions of the tasks billed and the expenses incurred. With regard to attorneys' fees, the invoices show the following in terms of time billed by the attorneys:

| Rate | | Time in Hours | | Fees |
|---|---|---|---|---|
| 220.00 | x | 86.05 | = | 18,931.00 |
| 240.00 | x | 189.45 | = | 45,468.00 |
| **TOTAL** | | | = | **$64,399.00** |

The Court has reviewed these invoices with an extremely fine-toothed comb. Ms. Cantleberry also submitted an excerpt from the Cook County Jury Verdict Reporter and a copy of the Attorney-Client Agreement signed by and between her and Mr. Brown and his firm; the Court has carefully reviewed these as well.

The Agreement provides that attorneys working on Ms. Cantleberry's case would be compensated at the rate of $240.00/hour; the Agreement makes no distinction between associates and partners, and the bills show that the attorneys all billed at the same rates. In fact, the bills show that about

4

two-thirds of the work was billed at the agreed-upon rate of $240/hour. But, for some reason, almost a third of the time was billed at a rate of $220.00/hour - something Ms. Cantleberry no doubt never complained about.

The defendants argue that the requested award is too high, and that it should be reduced for a variety of reasons. First, the defendants argue that the award should be reduced because some of the entries show that the attorneys either billed too much time or billed for tasks that should have been handled by a clerical person. Given the relatively complex nature of the case, the contentiousness between the parties, and the amount of time counsel was required to devote to this case, the Court is not inclined to make any significant blanket reductions to the lodestar amount. But, based upon its review of the invoices, the Court is compelled to reduce the award for fees that are clearly not reasonable. First, the Court agrees with the defendants that some of the time entries on the invoices reflect tasks that would seem to be purely clerical or administrative in nature, and a reduction for those types of charges is, therefore, appropriate. See *Spegon*, 175 F.3d at 553(affirming decision to disallow time spent by an attorney and paralegal on essentially clerical or secretarial tasks); *Seamon v. Barnhart*, No. 05 C 0013-C, 2006 WL 517631, at *7 (W.D. Wis. Feb. 23, 2006)(reducing a fee award for

time spent by attorneys on clerical tasks such as filing briefs, sending out proof of service, etc.). See also Hensley, 461 U.S. at 434 (fees for "excessive, redundant or otherwise unnecessary" hours should be disallowed). This reduction totals $3,443.00 (7.25 hours at $220/hour and 7.70 hours at $240/hour).

Additionally, with regard to the claim that the plaintiff's attorneys billed too much time for certain tasks, the Court sees one instance where that is certainly true: the trial; Mr. Brown's time will be decreased to match that of Mr. Bakhtiari, whose billing entries coincide more closely with the Court's records concerning the duration of the trial days. This reduction totals $1,320.00 (5.5 hours billed at the rate of $240/hour).

The defendants next argue that Ms. Cantleberry should not be permitted to recover fees incurred in connection with the deposition of Nancy Noyer because the Court has already denied those fees. The Court rejects this argument; a ruling that the plaintiff was not entitled to sanctions at the discovery stage does not bar an award of attorneys' fees at this stage. The Court also rejects the defendants' argument that they should not have to pay attorneys' fees at the same rate for all of the lawyers involved in the case, given that the associates (Stephen Siegel and Babak Bakhtiari) have significantly less experience than Burton Brown, who served as the supervising attorney and

lead trial counsel. The Court agrees that, as a practical matter, one might expect to pay more for a more experienced lawyer. But it is not clear that Ms. Cantleberry got ripped off on the associates; it is just as likely that she (and now the defendants) got a really good bargain on Mr. Brown. And, for much of the bills, she received a discount on the agreed-upon rate, which should make the defendants happy because they too will receive this discount; the Court cannot see why the defendants should be charged a higher rate than Ms. Cantleberry was charged. The Court finds that the rates are reasonable and will, therefore, honor the rates established in the Agreement between counsel and Ms. Cantleberry.

Finally, the defendants argue that any fee award must be reduced because Ms. Cantleberry ultimately obtained an award for less than half of the damages she initially sought in this case. The Court rejects this argument as well. In determining the reasonableness of attorneys' fees, the Seventh Circuit "has rejected the notion that the fees must be calculated proportionally to damages." *Alexander v. Gerhardt Enterprises, Inc.*, 40 F.3d 187, 194 (7th Cir. 1994)(citing *Wallace v. Mulholland*, 957 F.2d 333, 339 (7th Cir. 1992); *Estate of Borst*, 979 F.2d 511, 516-517 (7th Cir. 1992)). In light of the fact that Ms. Cantleberry prevailed on all of her claims, the Court

finds that the requested award, with the reductions already discussed, is reasonable.

Turning to the issue of costs, the plaintiff seeks to recover $3,410.38 and, to support her petition, she included invoices which generally describe the expenses incurred. According to the invoices, Ms. Cantleberry is seeking to recover costs incurred for postage, electronic research, document services, copying, court fees, service fees, witness fees, and other deposition-related services. Taking the latter first, because Ms. Cantleberry has not disclosed, for example, how long the transcripts were, what per page copying rate the court reporter charged, or whether the charges include expedited delivery or other extraordinary expenses, the Court has no way of determining whether they fell within the maximum allowable rates. Having no way to assess the reasonableness of these charges, the Court will disallow them; so too the copying charges. *See, e.g., Fischer v. Avanade, Inc.*, No. 05 C 5594, 2007 WL 3232494, at *1 (N.D. Ill. Oct. 31, 2007)(the prevailing party must present enough supporting documentation to allow the Court to determine whether specific costs were reasonable and necessary). The Court will also disallow counsel's Lexis charges and postage expenses; as overhead, these charges are presumably already reflected in the hourly rates charged by the lawyers. *See, e.g., Montgomery*

*v. Aetna Plywood, Inc.*, 231 F.3d 399, 409 (7th Cir. 2000). And, finally, the Court will allow the claimed witness fees, but only up to the statutory maximum of $40/day, see 28 U.S.C. §1821; this results in a $60 reduction for the 5/16/08 entry covering fees for six witnesses; a $10 reduction for the 9/15/08 entry; and a $30 reduction for the 9/15/08 entry covering fees for 3 witnesses. The remainder of the costs, totaling $1,049.36, are allowed.

### Conclusion

For the reasons explained above, the Court grants Ms. Cantleberry's Motion for an award of backpay and prejudgment interest [#63], and grants her Petition for Attorney's Fees [#56]. The Court awards Ms. Cantleberry backpay in the amount of $59,067.00, plus prejudgment interest on that award in the amount of $8,891.55; the Court also awards Ms. Cantleberry $59,636.00 in attorneys' fees and $1,049.36 in costs. These awards are in addition to the amounts awarded by the jury.

Dated: December 18, 2008        ENTER:

*/s/ Arlander Keys*
ARLANDER KEYS
United States Magistrate Judge