IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAULA S. CANTLEBERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 07 C 5695 |
| v. ) | |
| ) | Magistrate Judge Keys |
| PHYSICIAN CARE, LTD. and ) | |
| ALEXANDER NICHOLS, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Paula Cantleberry sued her former employer, Physician Care, Ltd. and her former supervisor, Dr. Alexander Nichols, alleging that Dr. Nichols sexually harassed her and then fired her for complaining about the harassment; she also alleged a claim of intentional infliction of emotional distress against Dr. Nichols. Ms. Cantleberry's case was tried to a jury, and, on September 17, 2008, the jury returned a verdict in favor of Ms. Cantleberry on all three claims. The jury awarded Ms. Cantleberry $43,750 in compensatory damages and $41,875 in punitive damages; the jury also determined that Ms. Cantleberry was entitled to backpay, though the parties had stipulated prior to trial that the Court would set the actual amount of that award. In a subsequent decision, dated December 18, 2008, the Court awarded backpay in the amount of $59,067.00, plus prejudgment interest on that award in the amount of $8,891.55; the Court also granted Ms.

Cantleberry's motion for attorneys' fees and costs, and awarded $59,636.00 on the former and $1,049.36 on the latter. Judgment to this effect was entered on December 18, 2008.

On January 5, 2009, the defendants filed a motion seeking a new trial under Federal Rule of Civil Procedure 59(a); specifically, the defendants argue that they are entitled to a new trial because: (1) the Court's denial of defendants' Rule 412 motion seriously prejudiced their ability to conduct a defense; and (2) the jury's compensatory damages award is excessive and unsupported by the evidence. In the alternative, the defendants ask the Court, pursuant to Rule 59(e) to amend the judgment; they argue that, as entered, the judgment is inconsistent with certain provisions of Title VII, and must, therefore, be amended.

A.  The Denial of Defendants' Rule 412 Motion

On September 2, 2008, the defendants filed a motion to allow evidence pursuant to Federal Rule of Evidence 412. Specifically, they wanted to be able to offer evidence that the plaintiff had suggested, on more than one occasion, that she and Grant Clausen have sex; they also wanted to put in evidence from Dr. Ghunheim, who would have testified that Ms. Cantleberry had, in the past, been sexually inappropriate with him. The Court denied the motion, both on the merits and because it was filed too late. The defendants now argue that the Court erred in so ruling. The

Court disagrees.

First, there's no question that the motion was late; the Rule provides that any such motion must be made at least 14 days before trial, and here it was not. To this day, the defendants have not offered any reason to excuse the delay; the evidence they sought to introduce was available well before they filed the motion, and there was simply no reason that the motion could not have been filed consistent with the time frame spelled out in Rule 412.

Moreover, on its merits, the motion was properly denied. Defendants argue that the evidence concerning Ms. Cantleberry's alleged sexual proclivities was probative in that it would tend to disprove her claim that she was fired in retaliation for filing a police report. But that theory is totally inconsistent with the defendants' own evidence, and it appears nowhere in the ever-expanding record of these proceedings. The defendants would seem to be changing theories, not mid-stream, but long after the stream has been crossed and left miles behind; that's simply not appropriate – especially when it finds no support (indeed, finds contradiction) in the record.

They also argue that the evidence is probative because it undermines her claim that Dr. Nichols's conduct made the work environment hostile. This argument is simply ridiculous. Even

3

if these allegations are true, the fact that plaintiff may have been sexually inappropriate with other men, says nothing about how she might view sexual advances or sexual aggression by Dr. Nichols; even if she made sexual advances toward other men, that says nothing about whether she would have found Dr. Nichols' advances to be unwelcome. In short, the evidence defendants sought to introduce had little or no probative value and it offered an extraordinary likelihood of prejudice; the Court stands by its decision to exclude this evidence. The fact that the motion was late merely sealed the deal.

B.  The Compensatory Damages Award

The defendants next argue that the jury's damages award must be reduced. The Court disagrees. The award was, by no means, "monstrously excessive"; nor is it without any rational connection to the evidence. On the contrary, the award is entirely consistent with the evidence: Ms. Cantleberry and her husband both testified about her emotional damages; she testified about the emotional and financial toll Dr. Nichols' conduct had on her; and more importantly, she described the events in graphic detail to the jury; the jury was free to infer from her testimony and her demeanor on the stand that this conduct had a profound impact on her life. There's no requirement that she seek the care of a professional, or that she demonstrate specific symptoms

4

of depression.

To support their argument that the award here was "monstrously excessive," the defendants rely on *Avita v. Metro Club of Chicago* – a case that has nothing to do with sexual harassment. By their very nature, acts of sexual harassment are degrading and humiliating; the distinction sets the case apart.

Additionally, although, as the defendants point out, Ms. Cantleberry and her husband talked about the financial toll her job loss took on their family, it would be difficult under the circumstances to separate that stress from the general emotional distress she suffered because of Dr. Nichols' reprehensible, outrageous conduct. Ms. Cantleberry testified that part of her emotional distress stemmed from her feelings of guilt over leaving her well-paying job, thus throwing her family into financial tumult. But, given what she was enduring at work, she felt she had no choice; no doubt that decision was agonizing in itself, further adding to her emotional distress. But, no matter how you slice it, Dr. Nichols' harassment is at the core of all those negative feelings.

C. Defendants' Rule 59(e) Motion

All of this notwithstanding, the Court agrees that the judgment must be amended. Rule 59(e) allows a judgment to be altered or amended when, inter alia, it reflects a manifest error

5

of law or fact. *E.g., Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Here, the defendants argue that the judgment, as it now stands, is inconsistent with the law in two respects. First, they argue, any liability imposed as a result of Ms. Cantleberry's Title VII claims must be against her employer, Physician Care, Ltd., and not against Dr. Nichols individually; they also argue that any award of compensatory and punitive damages against Physician Care must be capped at $50,000. And they are right on both accounts.

First, the defendants are right that Title VII imposes liability on employers, not on the individuals who do the actual harassing. *E.g., Williams v. Banning*, 72 F.3d 552 (7th Cir. 1995). Here, based upon the stipulations between the parties, the judgment did not distinguish between Dr. Nichols (the individual who did the harassing) and Physician Care, Ltd., the employer. The parties agreed that, if the jury found that Dr. Nichols harassed Ms. Cantleberry, Physician Care, Ltd. - the employer - would be liable; they also agreed that mentioning both entities on the verdict form would confuse the jury, without adding anything meaningful to the mix. Those stipulations, however, cannot be read to change the meaning or the spirit of Title VII. Thus, the defendants are correct that liability for the harassment attaches to the employer - here, Physician Care,

6

Ltd.

In opposition to the motion to amend the judgment, Ms. Cantleberry points out that, throughout pre-trial proceedings, Dr. Nichols at various times represented that he *was* Physician Care, Ltd. - that he ran the show and called all the shots. Even if that were the case, however, Physician Care was a separate legal entity, complying - as far as the Court is aware - with corporate formalities. And, under the law, it is the employer - the corporate entity - not the individual person charged with calling the shots - who is on the hook for sexual harassment. That is true even if the head honcho is also the harasser, as was the case here. Certainly Ms. Cantleberry has offered nothing at this point to suggest that it would be appropriate for the Court to pierce Physician Care's corporate veil and hold Dr. Nichols accountable in its place.

The Court also agrees that the statutory damages caps spelled out in 42 U.S.C. §1981a(b)(3) apply to any award imposed on Physician Care. According to the statute, damages assessed against employers with more than 14 and fewer than 101 employees are limited to $50,000. The defendants have represented that, at all relevant times, Physician Care, Ltd. employed 18 workers; Ms. Cantleberry has not challenged that representation, and the Court has no reason otherwise to doubt it. Thus the award of

compensatory and punitive damages on Ms. Cantleberry's Title VII claims (excluding front pay, backpay and interest on backpay) is limited to $50,000. *See* 42 U.S.C. §1981a(b)(2); *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 852 (2001).

The difficulty here is that Ms. Cantleberry actually presented three claims at trial – a sexual harassment claim, a retaliation claim and a claim for intentional infliction of emotion distress. And, although the jury was instructed separately on each claim and asked to determine liability separately for each claim, the verdict form – which was approved by the parties – did not require separate damages calculations for each claim. Thus, although the jury determined that Ms. Cantleberry won on all three of her claims, the Court has no way of knowing how much money the jury actually intended to award for each specific claim.

The defendants have proposed apportioning the compensatory and punitive damages awards such that Physician Care would be on the hook for $50,000.00, and Dr. Nichols would be on the hook for the remaining $35,625.00. And that certainly seems fair. The Seventh Circuit has suggested that, rather than trying to apportion the damages, courts should leave the compensatory damages in tact and reduce the punitives as necessary to comply with the cap. *See, e.g., Lust v. Sealy, Inc.*, 383 F.3d 580, 589

(7th Cir. 2004). But that approach is difficult to apply here, given that there were three claims (only two of which are subject to the cap) and two parties (only one of which is subject to the cap). And it is less likely to uphold the jury's chosen path in that it would either result in a significant reduction in the jury's punitive damages award, or in a judgment against Dr. Nichols that is exclusively punitive. Accordingly, the Court opts instead to apportion the jury's awards as discussed above. Thus, Ms. Cantleberry is awarded $50,000.00 against Physician Care, Ltd. on her Title VII sexual harassment and retaliation claims ($25,000.00 in compensatory damages and $25,000.00 in punitive damages); Physician Care, Ltd. shall also be liable to Ms. Cantleberry for backpay in the amount of $59,067.00, plus interest on backpay in the amount of $8,891.55. Additionally, Ms. Cantleberry is awarded $35,625.00 against Dr. Nichols on her intentional infliction of emotional distress claim ($18,750.00 in compensatory damages and $16,875.00 in punitive damages). Beyond these amounts, the defendants will also be on the hook for attorneys' fees and costs, which the Court addresses below.

D. Ms. Cantleberry's Motions

Along with her response to the defendants' Rule 59 motion, Ms. Cantleberry filed a request for sanctions and a motion to supplement the earlier award of attorneys' fees and costs. The

former is denied; the defendants' post-trial conduct does not merit sanctions. The latter is granted; Ms. Cantleberry is entitled to recover fees and costs for work done post-trial, just as she was entitled to recover fees and costs for work done before and during the trial. But because she didn't actually prevail on her motion for sanctions or in her opposition to the defendants' motion to amend the judgment, the Court will reduce her requested award accordingly (specifically, the Court will cut 6.0 hours of time, billed at the rate of $240.00/hour). The Court will allow Ms. Cantleberry to recover another $8,256.40 in attorneys' fees and costs, bringing the total award for fees and costs to $68,941.76. Given the allocation of liability on Ms. Cantleberry's claims, this award is imposed upon both defendants, jointly and severally.

## Conclusion

For the reasons explained above, the defendants' Rule 59 Motion [Docket # 80] is granted in part and denied in part; the request for a new trial is denied, but the motion to amend the judgment is granted. Additionally, Ms. Cantleberry's motion to supplement the previous attorneys' fees award [Docket #88] is granted; the Court will add another $8,256.40 to the prior award. Thus, the judgment is amended to reflect the following:

(1) judgment is entered in favor of Ms. Cantleberry and

against Physician Care, Ltd. in the amount of $117,958.55 (this award is comprised of compensatory and punitive damages in the amount of $50,000.00, plus backpay and interest on backpay in the amount of $67,958.55);

(2) judgment is entered in favor of Ms. Cantleberry and against Dr. Alexander Nichols in the amount of $35,625.00;

(3) additionally, the Court awards Ms. Cantleberry attorneys' fees and costs in the amount of $68,941.76, to be assessed against both defendants, jointly and severally.

The total award against both defendants is $222,525.31.

Dated: April 8, 2009

ENTER:

*[signature: Arlander Keys]*
ARLANDER KEYS
United States Magistrate Judge