MHW

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAULA S. CANTLEBERRY, | ) |
| | ) |
| Plaintiff, | ) Case No. 07 C 5695 |
| | ) |
| v. | ) |
| | ) Magistrate Judge |
| PHYSICIAN CARE, LTD. and | ) Arlander Keys |
| ALEXANDER NICHOLS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Paula Cantleberry sued her former employer, Physician Care, Ltd., and her former supervisor, Dr. Alexander Nichols, alleging that Dr. Nichols sexually harassed her and then fired her for complaining about the harassment; she also alleged a claim of intentional infliction of emotional distress against Dr. Nichols. Ms. Cantleberry's case was tried to a jury, and, on September 17, 2008, the jury returned a verdict in her favor on all three claims. The jury awarded Ms. Cantleberry $43,750 in compensatory damages and $41,875 in punitive damages; the jury also determined that Ms. Cantleberry was entitled to backpay, though the parties had stipulated prior to trial that the Court would set the actual amount of that award. In a subsequent decision, dated December 18, 2008, the Court awarded backpay in the amount of $59,067.00, plus prejudgment interest on that award in the amount of $8,891.55; the Court also granted Ms. Cantleberry's motion for attorneys' fees and costs, awarding $59,636.00 on the former and

$1,049.36 on the latter. Judgment to this effect was entered on December 18, 2008.

On January 5, 2009, the defendants filed a motion seeking a new trial under Federal Rule of Civil Procedure 59(a); alternatively, they asked that the judgment be amended to conform to the provisions of Title VII. The Court denied the motion for new trial, but granted in part the motion to amend the judgment. Specifically, the Court amended the judgment to apportion liability against the two separate defendants; judgment was entered against Physician Care in the amount of $117,958.55, and against Dr. Nichols in the amount of $35,625.00. The Court assessed the fee award – $68,941.76 – against both defendants, and also awarded Ms. Cantleberry an additional $8,256.40 in attorneys' fees for work performed in connection with post-trial proceedings. Thus, the total award against both defendants was $222,525.31; an amended judgment to this effect was entered on April 8, 2009.

While Ms. Cantleberry's claims were making their way through this Court, Dr. Nichols and his (now ex) wife were, at the same time, embroiled in what appears to have been extremely acrimonious divorce proceedings. The proceedings were initiated in 2002, and, on December 12, 2008, after Dr. Nichols failed to appear for the trial of the divorce matter, the judge presiding over the divorce case appointed a receiver (George Feiwell) to

take control of Dr. Nichols' assets. According to Ms. Cantleberry, while post-trial matters were proceeding in her sexual harassment case, Dr. Nichols was liquidating his assets and preparing to flee to Egypt; Ms. Cantleberry has represented that, on information and belief, Dr. Nichols has now permanently relocated to Egypt, taking with him one of his minor children, also named Alexander. Judgment for dissolution of marriage was entered in the divorce matter on April 24, 2009, awarding Nina Nichols the marital residence in Barrington, Illinois and $5,000 per month in child support; additionally, the judgment awarded Ms. Nichols the real property upon which Dr. Nichols had operated a coffee roasting facility (she was also awarded all of the coffee roasting equipment located therein); all proceeds from the sale of Physician Care Limited; all proceeds from the sale of the assets of Physician Care Limited; and all proceeds from the sale of the beneficial interest in the Chicago Title Land Trust Company Trust Number 1095311. See Plaintiff's Response to Nina Nichols' Objection to Plaintiff's Motion for Turnover of Assets, Exhibit I. On April 29, 2009, the domestic relations court entered an order amending the judgment for dissolution "nunc pro tunc" to award "all property in possession of the receiver to Nina Nichols including but not limited to the condos in Gurnee in the name of Alexander Nichols and all proceeds thereon." *Id.*, Exhibit J.

Ms. Cantleberry's attorneys were aware of the divorce proceedings. Indeed, on April 24, 2009, they served the receiver, Mr. Feiwell, with a citation to discover assets. This was not counsel's first contact with Mr. Feiwell; counsel had corresponded with Mr. Feiwell prior to serving the citation. Specifically, on April 21, 2009, Burton Brown, Ms. Cantleberry's attorney, wrote to Mr. Feiwell to inform him of the judgment she had obtained in her federal suit, and to "demand that the judgment be satisfied in full from the assets being held by you in your capacity as Receiver . . . ." See Plaintiff's Response to Nina Nichols' Objections to Plaintiff's Motion for Turnover of Assets, Exhibit F. Along with the letter, Mr. Brown forwarded copies of the judgment and the amended judgment. Id.

Upon receiving the letter, Mr. Feiwell petitioned the judge presiding over the divorce proceedings for instructions as to how to proceed. He advised the court of Mr. Burton's letter and attached copies of the judgment; he also advised the court that he had not been served with a citation to discover assets (that came later; he received it on April 27, 2009). Mr. Feiwell was apparently advised that, if no citation had been served, he had no obligation to turn over any assets. He answered the citation on April 30, 2009, providing copies of certain documents, including a closing book, relative to the sale of the assets of Physician Care; an order entered February 27, 2009 authorizing

4

the sale of the assets; Illinois Department of Revenue Bulk Stop Orders totalling $68,704; and Mr. Feiwell's amended petition to the court for authority to retain an accountant. The next month, on May 20, 2009, Mr. Feiwell forwarded a copy of an account statement for the escrow held at Village Bank and Trust; according to that statement, as of April 30, 2009, the escrow held just $13,406.58.

On May 12, 2009, Ms. Cantleberry's attorneys filed a motion in this Court, under Federal Rule of Civil Procedure 69(a), seeking an order compelling the receiver to turn over to Ms. Cantleberry the assets in his possession, custody and control. The Court allowed the receiver, Mr. Feiwell, and counsel for Nina Nichols to respond – both on paper and in court, and the Court granted Ms. Cantleberry's attorneys leave to file supplemental briefs and authority. In fact, in early July, the Court received a motion seeking to join yet another one of Dr. Nichols' judgment debtors, Dr. Mariusz Rogalski, who in a medical malpractice case against him and Physician Care obtained a default and summary judgment against Physician Care on his indemnification crossclaim. The Court set the matter for argument, heard from and questioned the receiver, as well as the attorneys for Dr. Rogalski, Ms. Nichols and Ms. Cantleberry.[1] In short, all

---

[1]The only (arguably) interested party not present was Dr. Nichols; neither he, nor his attorney, Tara Meadows, showed up for any of the turnover proceedings. In fact, because Ms.

5

interested parties have been fully heard on the turnover issue.

## Discussion

Federal Rule of Civil Procedure 69(a) directs federal courts to employ state procedure in proceedings to execute a judgment. Accordingly, the Court looks to Illinois law to determine what remedies may be available to Ms. Cantleberry in her attempt to collect on the judgment entered against Dr. Nichols and his company, Physician Care, Ltd.

Under Illinois law, a judgment creditor (which is what Ms. Cantleberry is vis á vis Dr. Nichols and Physician Care), may pursue the assets of a judgment debtor by serving a citation to discover assets on a third party. 735 ILCS 5/2-1402(a). Under the Illinois statute, the proper service of a citation to discover assets creates a lien on "all personal property belonging to the judgment debtor in the possession or control of that third party, or which thereafter may be acquired or come due the judgment debtor and comes into the possession or control of the third party to the time of the disposition of the citation." 735 ILCS 5/2-1402(m). The lien is considered perfected as of the date of service of the citation. *See, e.g., Cacok v. Covington,*

---

Meadows failed to show for the hearing on July 8th, the Court issued a rule to show cause; Ms. Meadows then appeared on July 15th, and explained that she opted not to show up because she had no issue with any of the turnover proceedings. The Court reminded her that, as counsel of record, she is obliged to attend, whether or not she had any issues with the proceedings. Counsel then represented that she would be sure to attend future proceedings.

111 F.3d 52, 54 (7th Cir. 1997)(citing *Appeal of Swartz*, 18 F.3d 413, 416 (7th Cir. 1994); *Bloink v. Olson*, 683 N.E.2d 406, 410 (Ill. App. Ct. 1994). Thus, until the citation is properly served, there is no lien; on the other hand, as of the date the citation was served on the receiver, Ms. Cantleberry possessed a perfected lien in any funds in the possession of the receiver held for Dr. Nichols or Physician Care; Ms. Cantleberry also had a perfected lien in any funds that were to come into the possession of the receiver on behalf of Dr. Nichols or Physician Care, but only for a period of six months from the date of the receiver's first personal appearance pursuant to the citation, or as extended by judicial order. See Illinois Supreme Court Rule 277(f); *Cacok*, 111 F.3d at 54.

Here, the parties all agree that the citation to discover assets was sent on April 24, 2009, and received by Mr. Feiwell on April 27, 2009. But by that time, any assets he held on behalf of Dr. Nichols or Physician Care had been transferred – pursuant to the Judgment for Dissolution of Marriage entered on April 24, 2009 – to Nina Nichols, who owed nothing to, and was not a judgment creditor of, Ms. Cantleberry. Indeed, at oral argument on the turnover motion, the Court specifically asked Mr. Feiwell what he possessed (on behalf of Dr. Nichols or Physician Care) as of the date he received the citation (April 27, 2009) and he represented that, at that time, he held no assets on behalf of

7

either judgment debtor. Thus, as unfair as it might seem, given the timing and under the circumstances, Ms. Cantleberry would seem to be out of luck.

Ms. Cantleberry argues that, given the posture of the divorce proceedings and given the April 29, 2009 order, which, although characterized as *nunc pro tunc*, fundamentally changed the effect of the April 24th Judgment, the judgment (and the transfer of property ordered therein) did not take effect until at least April 29th and possibly later. Thus, she argues, when Mr. Feiwell received the citation on April 27th, he still possessed property and assets on behalf of Dr. Nichols and/or Physician Care - property and assets that must now rightfully be turned over to Ms. Cantleberry pursuant to this Court's judgment.

Initially, the Court disagrees with Ms. Cantleberry's argument that the April 29, 2009 order materially altered the terms of the April 24th Judgment for Dissolution of Marriage. That judgment, quite simply, awarded everything to Nina Nichols - and rightfully so, it seems, given that Dr. Nichols had absconded to Egypt with everything that was not nailed down, leaving her and his remaining minor children with no means of support. The fact that some additional property was added to that list of holdings to be transferred can hardly be said to be material. In short, the Court sees no reason to challenge the April 29, 2009 order's *nunc pro tunc* effect.

Ms. Cantleberry argues that, even if the April 24, 2009 judgment order controls, the receiver, the divorce court and Ms. Nichols were aware of Ms. Cantleberry's judgment and "had a duty to honor same." To support her position, she relies heavily on *Podvinec v. Popov*, 658 N.E.2d 433 (Ill. 1995). But, if anything, *Podvinec* undermines her position.

In that case, Podvinec secured a judgment against Popov, and then served a citation to discover assets on Popov. When Popov answered the citation, Podvinec learned that Popov was actually involved in another lawsuit, where he was trying to enforce and collect on a mechanic's lien. Thereafter, the trial court in Podvinec's case entered an order imposing a "judicial lien" on any funds realized by Popov in his mechanic's lien case; then, on Podvinec's motion, the court in Popov's mechanic's lien case entered an order that the "judicial lien" was "spread of record." After all of this – after the citation was served, after Podvinec's lien was perfected, after the "judicial lien" was created and spread of record – assets were transferred in Popov's mechanic's lien case from the defendant therein to Popov (now Podvinec's judgment debtor), rather than being transferred to Podvinec, as should have happened in light of his perfected lien. *See Podvinec*, 658 N.E.2d at 434-35. Podvinec then sued Popov, as well as the defendants in Popov's mechanic's lien case, to recover the amount of his original judgment; he won in the trial

court, lost on appeal, and then won again in the Illinois Supreme Court; the issues on appeal centered on whether the trial court's "judicial lien" was valid. See id. at 435-36.

Putting aside the fact that this case, unlike the *Podvinec* case, does not involve a "judicial lien" order or any order formally "spreading of record" a perfected lien in the divorce proceedings, there is a crucial distinction between the *Podvinec* case and this case that Ms. Cantleberry seems to have ignored: Podvinec served the citation to discover assets, and the citation was received by Popov, Podvinec's judgment debtor, *before* the property was transferred in violation of the lien. In this case, in stark contrast, the citation was not received - the lien was not perfected - until *after* the property was (properly and legally) transferred out of the judgment debtor's hands. Prior to the receipt by Mr. Feiwell of the citation, there was no "lien" to spread of record. In short, *Podvinec* does not help Ms. Cantleberry.

Ms. Cantleberry argues that, because Mr. Feiwell knew about this Court's judgment on or about April 21, 2009 - before the Judgment for Dissolution of Marriage was entered on April 24, 2009 - he had some affirmative duty to prevent assets from being transferred from Dr. Nichols to Nina Nichols. But Illinois law says otherwise: the lien simply is not perfected until the citation is served. Imposing some duty on the receiver prior to

10

that time – whether or not he knew about the debt – would render the statute meaningless. Although the timing is unfortunate (and maybe even a little suspect), there is simply nothing to suggest that the domestic relations court's subsequent orders were entered in bad faith or in an effort to thwart Ms. Cantleberry's judgment collection efforts (and, even if there was, again, the law does not seem to provide for any exception to the hard and fast rule that the lien is not perfected until the citation is served).

Ms. Cantleberry also argues that, even if she cannot get the money already transferred to Nina Nichols, she should be entitled to receive any future payments made in connection with the sale of the Physician Care enterprise. The Court cannot see how that could be so. Although Illinois Supreme Court Rule 277(f) would allow the Court to grant an extension of the six-month lien period, that would do no good here; when that second installment comes due, it will go straight to Nina Nichols (under the judgment entered April 24th) and not to the receiver. After that order was entered, the receiver was no longer holding property belonging to the judgment debtors; to the extent he held any property, he was holding it on behalf of Nina Nichols.

Finally, Ms. Cantleberry argues that it is unfair and unjust for Nina Nichols to get from Dr. Nichols the property and assets that should have gone to Ms. Cantleberry – especially when Ms.

11

Cantleberry obtained her judgment so much earlier than did Ms. Nichols. But, at the end of the day, this argument simply is not persuasive. If these proceedings are any indication, Dr. Nichols is not a very nice man; according to the jury, he sexually harassed Ms. Cantleberry, and according to Ms. Cantleberry's attorneys, he stealthly liquidated his assets and absconded to Egypt, taking one of his sons with him and leaving the remaining children – and their mother – without funds, highly encumbered and with no means of support or sustenance. To be sure, both Ms. Cantleberry and Ms. Nichols were wronged by the conduct of Dr. Nichols. But, as between the two, it is hard to argue that Ms. Cantleberry – who merely worked for him – is the greater victim.

In a supplemental brief, Ms. Cantleberry asserts two new bases that she argues warrant a turnover of the assets formerly held by the receiver. First, she argues that the assets of a liquidated corporation may not be transferred to a third party without satisfying a known creditor's claims; thus, the proceeds from the sale of Physician Care could not properly pass to Nina Nichols, without first satisfying the judgment Ms. Cantleberry obtained against Physician Care. To support her argument, Ms. Cantleberry cites *Kennedy v. Four Boys Labor Service, Inc.*, 664 N.E.2d 1088 (Ill. App. Ct. 1996) and *Star Insurance Co. v. Risk Marketing Group, Inc.*, 561 F.3d 656 (7th Cir. 2009). But both of those cases involved fraudulent transfers – that is, the

transfers were made with an intent to defraud a creditor. *Wilkey v. Wax*, 225 N.E. 2d 813 (Ill. App. Ct. 1867), another case cited by Ms. Cantleberry, similarly deals with fraudulent conveyances.

There is no evidence here, however, to suggest that the relevant conveyances were, in any way, fraudulent. The transfer of assets from the receiver to Nina Nichols was legally and properly made in connection with the divorce decree. This is not a case, as discussed in *Wilkey*, where the husband judgment debtor transferred his assets to his wife to avoid having to pay his creditors; indeed, anything Nina Nichols got from Dr. Nichols she got despite his efforts to keep it from her.

Moreover, the holding Ms. Cantleberry cites from *Kennedy* applies when a third party sells (i.e., transfers for consideration) the assets of the corporate debtor with full knowledge of the existence of an outstanding claim against the corporation. *See Kennedy*, 664 N.E.2d at 1091. Thus, if Mr. Feiwell had sold Physician Care's assets with knowledge of Ms. Cantleberry's judgment, Ms. Cantleberry may have a leg to stand on. But that is not what happened here. Mr. Feiwell sold the company's assets in February. But he did not learn of Ms. Cantleberry's judgment until April. And, although he may have known about the judgment when he transferred the assets to Nina Nichols, that transfer was not "for consideration." Either way, *Kennedy* is inapplicable.

13

Ms. Cantleberry also argues that divorce courts may not transfer marital property to the detriment of known third-party creditors. Once again, the authority upon which she relies has nothing to do with this case; indeed, she cites *Kujawinski v. Kujawinski*, 376 N.E.2d 1382 (Ill. 1978) for a principle that seems to make sense here, but, when read in context, has nothing to do with the circumstances presented by this case. Although the Court does not blame her for her zealous efforts to claim what she thinks is rightfully hers, such tactics rarely work and here are not at all persuasive. As expressed by the Court during oral argument, there is a natural tendency for the Court to want to see its judgment come to fruition. The reality is, however, that some judgments are not collectible, for various reasons (death, bankruptcy, etc.) Unfortunately, for Ms. Cantleberry, this appears to be such a judgment, at least at this time and through this Motion.

## **CONCLUSION**

For the reasons explained above, Ms. Cantleberry's request for a turnover order is denied. Additionally, given the Court's ruling on the turnover order, Dr. Mariusz Rogalski's joinder motion is also denied.

Dated: July 31, 2009

ENTER:

/s/ Arlander Keys
ARLANDER KEYS
United States Magistrate Judge